1 | JOHN P. REITMAN (State Bar No. 80579)
JON L. R. DALBERG (State Bar No. 128259)
2 | RODGER M. LANDAU (State Bar No. 151456)
LANDAU GOTTFRIED & BERGER LLP
3 | 1801 Century Park East, Suite 1460
Los Angeles, California 90067
4 | Telephone: (310) 557-0050
Facsimile: (310) 557-0056
5 | jreitman@lgbfirm.com
jdalberg@lgbfirm.com
6 | rlandau@lgbfirm.com

7 | Counsel for Vineyard National Bancorp

**UNITED STATES BANKRUPTCY COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>VINEYARD NATIONAL BANCORP,<br><br>Debtor. | Bk. No. 2:10-bk-21661-RN<br><br>Chapter 11<br><br>Adv. Pro. No.<br><br>**COMPLAINT: (1) OBJECTING TO FDIC CLAIM; (2) FOR SUBORDINATION OF FDIC CLAIM; AND (3) COUNTERCLAIM FOR DECLARATORY RELIEF** |
| VINEYARD NATIONAL BANCORP,<br><br>              Plaintiff.<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR VINEYARD BANK, NATIONAL ASSOCIATION,<br><br>              Defendant. | |

LANDAU
GOTTFRIED &
BERGER LLP

Vineyard National Bancorp, a California corporation ("VNBC," or the "Debtor"), debtor in possession, for its claims against defendant herein, alleges as follows:

## I.

## JURISDICTION AND VENUE

1. This adversary proceeding arises out of and is related to the bankruptcy case *In re Vineyard National Bancorp,* Case No. 2:10-bk-21661-RN (the "Bankruptcy Case"). The Bankruptcy Case was commenced by a voluntary petition (the "Petition") under chapter 11 ("Chapter 11") of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), filed on July 21, 2009 (the "Petition Date"). The Bankruptcy Case initially was pending in the United States Bankruptcy Court for the Central District of California, Riverside Division. On March 29, 2010, the Bankruptcy Case was transferred to the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Court"), where it currently is pending. The commencement of the Bankruptcy Case created the chapter 11 bankruptcy estate of VNBC (the "Estate").

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a).

4. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (C) and (O).

5. This objection to claim, and counterclaim for declaratory relief, which also seeks subordination of those claims, if they are allowed, is properly brought by adversary proceeding pursuant to Fed. R. Bankr. P. 3007(c) and 7008(8) and (9).

## II.

## PARTIES

6. VNBC is the debtor in possession and has standing to bring the claims alleged herein on behalf of the Estate.

7. Defendant Federal Deposit Insurance Corporation (the "FDIC") is the federal agency charged with, among other duties, administering the Federal Deposit Insurance Act, 12 U.S.C. §§

LANDAU
GOTTFRIED &
BERGER LLP

2

1811, *et seq.*, and the federal bank deposit insurance system established thereunder. As described below, on January 15, 2010, the FDIC filed a proof of claim (the "FDIC POC") in the Bankruptcy Case in its capacity as the receiver of Vineyard Bank National Association (the "Bank"), VNBC's wholly-owned bank subsidiary. By this Complaint, VNBC sues the FDIC in its corporate capacity as an insurer of deposits and in its capacity as the Receiver of the Bank. This adversary proceeding, among other things, requests that the Court disallow or, to the extent it is allowed, subordinate the FDIC POC.

### III.

### FACTUAL ALLEGATIONS

A.  BACKGROUND: REGULATORY OVERSIGHT OF VNBC AND THE BANK AND EVENTS LEADING TO COMMENCEMENT OF VNBC'S BANKRUPTCY CASE.

8.  Beginning in 2007, a sharp deterioration of national economic conditions, and more particularly, the Southern California real estate market, caused the Bank to suffer substantial losses in its loan portfolio. In September 2007, the then Board of Directors of VNBC and the Bank instructed management to re-evaluate and recommend actions deemed necessary or advisable to adjust VNBC's and the Bank's overall risk profile, with the result that a Risk Mitigation Plan was developed that focused on reducing certain loan concentration limits, tightening loan underwriting standards, enhancing ALL and risk grading policies and procedures, and further addressed other areas of enterprise risk.

9.  In its Form 10-K filed with the Securities and Exchange Commission on May 19, 2008, VNBC reported that on May 5, 2008 (the "May 5, 2008 Notice") the Bank was notified by its primary regulator, the Office of the Comptroller of the Currency ("OCC"), that the Bank was deemed to be in "troubled condition" and that on May 16, 2008 (the "May 16, 2008 Notice") VNBC was notified by its primary regulator, the Board of Governors of the Federal Reserve System (the "Reserve Bank") that VNBC was deemed in "troubled condition" and that VNBC was required by Reserve Bank policy to take all actions necessary to ensure that its assets were conserved for the sole benefit of the Bank.

10. On July 22, 2008, the Bank consented to the issuance of a Consent Order (the "Consent

Order") by the OCC. Pursuant to the Consent Order, the Bank agreed to, among other things, (i) seek to obtain more competent management; (ii) maintain certain capital levels; (iii) develop, implement and adhere to a three-year capital program; (iv) establish a program for the maintenance of appropriate loss allowances; (v) adopt, implement and adhere to an acceptable asset diversification program; (vi) revise and adhere to certain loan underwriting guidelines; and (vii) take steps to maintain its liquidity at a level sufficient to sustain its then current operations.

11.     On July 15 and 29, 2008, VNBC submitted to the Reserve Bank cash flow projections and a request to pay certain expenses in the amount of $858,234 relating to investor due diligence, proxy and regulatory matters (the "July 2008 Transfers"). The Reserve Bank did not object to that request (i.e., it approved the request) because the payments were intended to benefit the Bank through capital restoration efforts and were critical for the ongoing solvency of VNBC, but also required that management perform an analysis of the cash needs for VNBC through October 31, 2008 and that any amounts not required for VNBC's operations be contributed to the Bank to support its operational needs.

12.     On September 19, 2008, VNBC reported to the Reserve Bank on its efforts to improve the Bank's condition. Among other things, VNBC reported that (i) it was attempting to raise $250 million in equity capital; (ii) of the seven seats constituting the board, five new members and two incumbent members had recently been elected to VNBC's board of directors; (iii) VNBC had four directors who were community bankers with years of experience in the industry and significant turnaround experience; (iv) VNBC and the Bank had appointed a new chief executive officer and the Bank had appointed a new Executive Vice President/Chief Credit Officer who also was Executive Vice President/Chief Risk Officer of VNBC; and (v) VNBC had engaged professionals to assist it in restructuring its balance sheet, raising equity capital and liquidating portions of the Bank's loan portfolio.

13.     On September 23, 2008, VNBC executed and thereafter delivered to the Reserve Bank a written agreement (the "Written Agreement") in which VNBC agreed, among other things, (i) not to declare or pay any dividends or make any distributions; (ii) not to take any payments representing a reduction in capital from the Bank; (iii) not to incur, increase or guarantee any debt or purchase or

redeem any of its shares of stock; (iv) within 60 days, to submit an acceptable written plan to maintain a sufficient capital position for VNBC and the Bank; (v) to comply with, and require the Bank to comply with, certain regulations pertaining to transactions between VNBC, non-banking affiliates and the Bank; and (vi) to comply with certain requirements and restrictions pertaining to appointing directors or officers, changing the responsibilities of senior executives and restrictions on the indemnification of and severance payments to such persons. This agreement also expressly called for the Reserve Bank to approve the capital plan that was to be submitted by VNBC.

14.     On September 23, 2008, in order to comply with, among other things, the prohibitions contained in the Written Agreement against distributions and the purchase or redemption of any of its shares of stock, VNBC sent to the Reserve Bank a request for authorization to issue, pursuant to a private placement memorandum dated September 18, 2008, up to $250 million in investment units consisting of convertible notes and common stock, with approximately $39.1 million of the proceeds to be used to retire, at a significant discount, certain debt and preferred stock of VNBC and at least $100 million of the proceeds to be down-streamed to the Bank as additional capital. The Reserve Bank did not object to this request.

15.     In or about November 2008, the OCC and the FDIC each had field examiners in the offices of VNBC and the Bank on a full time basis who, at their request, had access to the books and records of VNBC and the Bank and other information concerning VNBC's ongoing efforts to either obtain additional capital for the Bank or sell the Bank.

16.     On December 31, 2008, the Bank provided a report to the OCC on its efforts to comply with various elements of the Consent Order, including problem loan resolution and liquidity. It also reported that (i) efforts to raise outside capital of $250 million through a private placement had not been successful and were no longer considered a viable option; (ii) after consultation with VNBC and outside professionals, the sale of the Bank would be pursued; and (iii) VNBC had entered into an agreement for the sale of the Bank pursuant to which, among other things, the prospective buyer proposed to raise additional capital, of which approximately $100 million would be down-streamed into the Bank.

17.     On February 26, 2009, the Bank again reported to the OCC on its efforts to comply with

the Consent Order and to raise additional capital for the Bank.

18. Also in February 2009, VNBC notified the Reserve Bank that it would, and on February 27, 2009 it did, transfer $1 million of VNBC's funds to the Bank (the "February 2009 Transfer"), consistent with Reserve Bank guidance that VNBC was expected to regularly reassess its cash resources and downstream any excess funds to support the Bank's ongoing viability.

19. On April 30, 2009, the Bank became subject to certain mandatory requirements, including the requirement that it submit an acceptable "Capital Restoration Plan" by May 18, 2009.

20. By early May 2009, the agencies with regulatory control over the Bank and VNBC knew, or reasonably should have known, that the Bank was significantly undercapitalized and that there were no realistic scenarios in which the Bank or its parent holding company can raise sufficient capital to achieve adequately capitalized status within any realistic and satisfactory timeframe of an acceptable capital restoration plan."

21. On July 17, 2009, the OCC closed the Bank, seizing control of its books, records and other papers, and appointed the FDIC as receiver. On that same date, the FDIC facilitated the acquisition of most of the assets and liabilities of the Bank by California Bank & Trust ("CB&T")

22. On July 21, 2009 (the "Petition Date"), VNBC filed its petition for relief under chapter 11 of the Bankruptcy Code.

**B.     REGULATORS CONTROL OF VNBC AND THE BANK.**

23. At all times from and after not later than May 5, 2008, the OCC and the FDIC had the power to exercise control over the Bank and thus were insiders, within the meaning of 11 U.S.C. § 101(31)(B), of the Bank and, in that capacity, had the power to exercise control over the Bank's holding company parent, VNBC. Moreover, at all times from and after not later than May 15, 2008, the Reserve Bank and the FDIC had the power to exercise control over VNBC and thus were insiders, within the meaning of 11 U.S.C. § 101(31)(B), of VNBC.

24. Beginning in May 2008 and continuing until the Petition Date VNBC transferred at least $1,000,000 in funds to the Bank, including the February 2009 Transfer (collectively, the "VNBC/Bank Transfers") that were intended to benefit and did benefit the Bank and/or the FDIC and ultimately depleted VNBC's estate in the Bankruptcy Case. VNBC currently is not able to

identify the full amount of the VNBC/Bank Transfers because such information is not in its possession. VNBC is informed and believes that documents reflecting or evidencing those transfers are in the possession of the FDIC, in its capacity as the receiver of the Bank, and/or CB&T.

25. VNBC made some or all of the VNBC/Bank Transfers in response to the supervisory action taken in May 2008, the Consent Order, the Written Agreement and otherwise to in accordance with directives and guidance of the FDIC, the OCC and the Reserve Bank to downstream funds to support the Bank's ongoing viability notwithstanding that the aggregate amount of the VNBC/Bank Transfers would be insufficient to satisfy the risk-based capital ratio requirements applicable to the Bank contained in the Consent Order and irrespective of VNBC's own capital needs and condition. At the times of those transfers, both VNBC and the Bank had acknowledged to their federal banking regulators the significant continuing deteriorating financial condition of both entities, including their liquidity, capitalization and profitability, and that further capital contributions by VNBC would deplete its cash reserves and further its decline. At the same time, VNBC actively sought, through the sale of securities in a private placement, additional capital for the Bank and to sell the Bank outright to a third party who would be able to infuse additional capital into the Bank.

26. At all times from and after May 5, 2008, the OCC, the Reserve Bank and the FDIC knew or reasonably should have known that VNBC owed fiduciary duties to its shareholders and, while VNBC was insolvent, to its creditors. Nevertheless, the OCC, the Reserve Bank and the FDIC actively sought to cause and did cause VNBC to improperly prefer their interests through the VNBC/Bank Transfers made on or after that date, and in particular the FDIC's interests as an entity that had guaranteed the payment of obligations of the Bank to its depositors.

C. **REGULATORS' FAILURE TO OBTAIN OR APPROVE AN ACCEPTABLE CAPITAL RESTORATION PLAN.**

27. Although the Written Agreement required VNBC "to submit to the Reserve Bank an acceptable written plan to maintain a sufficient capital position [for VNBC] and the Bank," no such "acceptable plan" was ever submitted to or approved by any of the OCC, the Federal Bank or the FDIC. Instead, as described above in Section III.1, VNBC repeatedly reported on its unsuccessful efforts to obtain external financing for the Bank and made clear that such financing, despite its best

1  efforts, could not be obtained.

2  28.    At no time did VNBC guarantee any of the obligations of the Bank under the Consent Order, the Written Agreement, or otherwise. If the FDIC contends that VNBC did guarantee the Bank's performance of such obligations, which contention VNBC denies, any guarantee by VNBC of the Bank's performance of such obligations (the "VNBC Guarantee") was a contingent obligation made while VNBC was insolvent, or that rendered VNBC insolvent, and was made without VNBC receiving any reasonably equivalent value or consideration therefore and was both an actual and a constructive fraudulent transfer.

29.    At no time did the OCC, the Reserve Bank, the FDIC or any other Federal banking agency issue any effective, written direction to increase the capital of the Bank that was binding on VNBC.

### IV.

### FIRST CLAIM FOR RELIEF

### Disallowance of Claim Pursuant to 11 U.S.C. § 502(b)

30.    VNBC incorporates the allegations of paragraphs 1-29, above.

31.    On January 15, 2010, the FDIC filed the FDIC POC, which is identified as claim no. 44 on the Claims Docket in this Bankruptcy Case. A true and correct copy of the FDIC POC is attached as Exhibit "A."

32.    The FDIC POC asserts that the FDIC, as Receiver for the Bank, is entitled to recover an unspecified amount of money from the Estate based on alleged (i) tax related entitlements, (ii) capital maintenance obligations, (iii) claims based on avoidance and/or recovery of purported fraudulent transfers and (iv) tort based claims.

33.    Bankruptcy Code section 502(d) provides, in relevant part:

34.    Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that-

    (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured; . . .

11 U.S.C. § 502(d).

35. The FDIC POC is invalid or unenforceable against VNBC other than because such claim is contingent or unmatured. Without shifting the burden of proof, production, or persuasion, VNBC is informed and believes and therefore contends that the claims asserted in the FDIC POC are invalid and unenforceable for, among other reasons, the reasons set forth in paras. 36-40, below. VNBC expressly reserves the right to amend this objection based on discovery and to conform to proof.

36. On information and belief, VNBC generally denies the allegations made in paras. 3, 4.a, 4.b, 4.c, 4.d, 4.e, 5.a., 5.b, 6.a, 6.b, 6.c, 6.d, 6.e, 7.a, 7.b and 7.c of the FDIC POC.

37. VNBC further alleges that the allegations made in paras. 3, 4.a, 4.b, 4.c, 4.d, 4.e, 5.a., 5.b, 6.a, 6.b, 6.c, 6.d, 6.e, 7.a, 7.b and 7.c of the FDIC POC fail to state a claim on which relief can be granted or a valid basis in law for a claim against the Estate. In particular, and without waiving the generality of the foregoing, (i) para.4.a fails to allege facts that constitute an unjust enrichment, breach of contractual duties of VNBC to the Bank (if such duties exist), or breach of fiduciary duties of VNBC to the Bank (if such duties exist) or the existence of an express, implied or statutory trust in favor of the Bank or the FDIC in its capacity as Receiver for the Bank (including, without limitation, with respect to income tax refunds due, including in connection with consolidated tax returns filed by VNBC for itself and the Bank for the years 2008 and 2009 and 2003 through 2005), or a basis for an administrative priority claim by the Bank or the FDIC as Receiver for the Bank (including, without limitation, with respect to income tax refunds due, including in connection with consolidated tax returns filed by VNBC for itself and the Bank for the years 2008 and 2009 and 2003 through 2005), or a basis for the exercise of the exclusive jurisdiction of the United States District Court as provided for under title 12, and administrative and judicial hearings pursuant to 12 U.S.C. § 1821(d); (ii) paras. 5.a and b. fail to allege facts giving rise to and enforceable payment obligation of VNBC or the Estate or a basis for a priority claim under 11 U.S.C. §. 507(a)(9); (iii) para. 6.a fails to allege facts that evidence an intent to hinder, delay or defraud the Bank; (iv) paras. 6.b., 6.c., 6.d and

6.e fail to allege facts that constitute a fraudulent transfer or any claim that the FDIC has standing to pursue; (v) para. 7 fails to allege facts demonstrating that VNBC is liable for any breaches of fiduciary duties owed by its directors and officers to the Bank (to the extent, if any, that such duties exist and were breached) or that the Bank or the FDIC is entitled any rights or remedies under insurance policies pursuant to which VNBC is an insured or additional insured; and (vi) para. 7.c fails to allege any unlawful conduct giving rise to an indemnity or contribution right of the Bank or the FDIC against VNBC.

38.     Without limiting the foregoing, to the extent that the Bank or the FDIC is or was entitled to any portion of the tax refunds referenced in the FDIC POC or in any amendment thereto, notwithstanding VNBC's position set forth in this Complaint, any amounts owed to the Bank from those refunds must be used to offset or recoup (i) any amounts owed to the IRS stemming from any proof of claim that it has filed or may hereafter file in this Bankruptcy Case or other claims that it may assert against VNBC that are based on the Bank's separate tax liability, as well as (ii) any other adjustments that VNBC may make to the income, gain, losses, deductions or credits with respect to any tax year for which VNBC filed consolidated tax returns on behalf of the Bank.

39.     The purported reservations of rights set forth in the FDIC POC is based on legal conclusions concerning the nature of those rights, their availability to the FDIC and whether the FDIC may reserve such rights under the circumstances and in the manner set forth in the FDIC POC and, as such, require no response from VNBC. To the extent that any such response may be required, VNBC generally and specifically denies each of the allegations contained in the reservation of rights section of the FDIC POC.

40.     Therefore, the FDIC POC should be disallowed or, if allowed at all, only allowed in an amount that reflects (i) enforceable obligations against VNBC under applicable law and (ii) an appropriate credit for the offsets and recoupment set forth above.

/ / /

/ / /

/ / /

/ / /

LANDAU
GOTTFRIED &
BERGER LLP

10

V.

## SECOND CLAIM FOR RELIEF

**Subordination of Claim Pursuant to 11 U.S.C.§. 510(b)**

41. VNBC incorporates the allegations of paras. 1-29 and 31-40, above.

42. Bankruptcy Code s. 510(b) provides:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal to the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b).

43. Some of all of the claims in the FDIC POC are claims for damages arising from the purchase or sale of VNBC or other stock, or for reimbursement or contribution allowed under section 502 on account of such a claim, including the claim based on "indemnity or contribution rights that Bank is entitled to assert against Debtor due to Debtor's unlawful conduct relating to ERISA, securities class actions and any other claims to which Bank is or may be named a defendant."

44. Therefore, the Court should subordinate the FDIC POC to the general unsecured claims against the Estate to the full extent permitted by 11 U.S.C. § 510(b).

VI.

## THIRD CLAIM FOR RELIEF

**Subordination of Claims Pursuant to 11 U.S.C. § 510(c)**

45. VNBC incorporates the allegations of paragraphs 1-29, 31-40 and 42-44, above.

46. 11 U.S.C. § 510(c) provides:

> Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the

LANDAU
GOTTFRIED &
BERGER LLP

11

1   court may-

2   (1)   under principles of equitable subordination, subordinate for
3   purposes of distribution all or part of an allowed claim to all or part of
4   another allowed claim or all or part of an allowed interest to all or part of
5   another allowed interest.

6   11 U.S.C § 510(c).

7   47.   At all relevant times, the Bank was and still is an insider (within the meaning of 11
8   U.S.C. § 101(31)(B)) of VNBC and the FDIC also was an insider (within the meaning of 11 U.S.C.
9   § 101(31)(B)) of VNBC and the Bank by virtue of its control over those entities, and the FDIC has
10  filed the FDIC POC as Receiver for the Bank.

11  48.   The FDIC engaged in inequitable conduct by inducing VNBC to improperly place the
12  interests of the FDIC as the eventual receiver for the Bank ahead of the interests of VNBC and its
13  creditors by making the VNBC/Bank Transfers, in that VNBC received less than reasonably
14  equivalent value and less than fair consideration for each of such transfers thereby causing a
15  reduction of assets available for distribution in VNBC's estate in the Bankruptcy Case to the
16  detriment of VNBC's general unsecured creditors. This inequitable conduct has resulted in harm to
17  VNBC and to its entire creditor body.

18  49.   Principles of equitable subordination require that the FDIC POC be equitably
19  subordinated to the allowed general unsecured claims against VNBC, and equitable subordination as
20  requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

21                          **VII.**
22                  **FOURTH CLAIM FOR RELIEF**
23         **Declaratory Relief:  That VNBC is Entitled to Receive Tax Refunds**

24  50.   VNBC incorporates the allegations of paragraphs 1-29, 31-40, 42-44 and 46-49, above.
25  51.   At all relevant times, (i) VNBC filed consolidated tax returns for VNBC and the Bank, in
26  accordance with the Internal Revenue Code [CITE] and applicable law regulations (the
27  "Consolidated Returns"); and (ii) the Bank and VNBC were parties to one or more tax sharing
28  agreements (collectively, the "Tax Sharing Agreement") which allocated between VNBC and the

1 Bank the benefits and burdens of taxes and/or refunds that may be or become owed and/or due in
2 connection with such Consolidated Returns.
3 52.   An actual controversy has arisen between VNBC and the FDIC regarding their respective
4 entitlements to receive refunds in connection with VNBC's consolidated tax returns for the years
5 2008 and 2009 and, if tax refunds are due for the years 2003 through 2005 as a consequence of 2008
6 loss carry backs, for those years as well.
7 53.   VNBC contends that it is entitled to receive any and all refunds in connection with its
8 consolidated tax returns and that any legal right of the FDIC or the Bank to tax refunds is made, if at
9 all, solely as general unsecured claims against the Estate, subject to the objections and claims set
10 forth in this Complaint.
11 54.   The FDIC disputes VNBC's contentions as set forth in the preceding paragraph and
12 asserts that it is entitled to some or all of any refunds that may be due in connection with VNBC's
13 consolidated tax returns for the years 2003 through 2005 and 2008 and 2009.
14 55.   The controversy between VNBC and the FDIC is definite, concrete, real and immediate,
15 and their respective interests are adverse.
16 56.   Under 11 U.S.C. § 105 and 28 U.S.C. §§ 2201 and 2202, VNBC is entitled to a
17 declaratory judgment that it is entitled to the refunds in connection with its consolidated tax returns
18 for the years 2008 and 2009 and 2003 through 2005, and that any legal right of the FDIC or the Bank
19 to tax refunds is properly made, if at all, solely as general unsecured claims against the Estate,
20 subject to the objections and claims set forth in this Complaint.

## VIII.

## **FIFTH CLAIM FOR RELIEF**

**Declaratory Relief:  That VNBC is Entitled to Insurance Proceeds and Premium Refunds.**

24 57.   VNBC incorporates the allegations of paragraphs 1-29, 31-40, 42-44, 46-49 and 51-56,
25 above.
26 58.   At all relevant times, VNBC was the owner of one or more insurance policies
27 ("Policies") under which VNBC and the Bank were each named or additional insureds.
28 59.   An adversary proceeding ("D/O Adversary Proceeding") is pending in this Bankruptcy

LANDAU
GOTTFRIED &
BERGER LLP

13

Case in which the Official Committee of Unsecured Creditors ("Committee") appointed in VNBC's Bankruptcy Case, on behalf of the Estate and pursuant to the Court's *Order Vesting Official Committee of Unsecured Creditors with Authority and Standing to Investigate, Bring, Maintain and Settle Claims* (Bankruptcy Case Docket No. 64), asserts claims against certain former directors and officers of VNBC, for which those former directors and officers may be entitled to coverage under one or more of such Policies.

60. The FDIC, has asserted claims against certain former directors and officers of the Bank, for which those directors and officers also may be entitled to coverage under one or more of such Policies.

61. An actual controversy has arisen between VNBC and the FDIC regarding the respective entitlements of the Estate and the FDIC to any insurance coverage benefits ("Insurance Proceeds") payable or paid under, and certain refunds of insurance premiums (the "Premium Refunds") paid or owed to VNBC in connection with, one or more of the Policies.

62. VNBC contends that the Estate (through the Committee and/or any successor to the Committee) is entitled to receive any Insurance Proceeds that may be payable or paid under from Policies with respect to the D/O Adversary Proceeding and any Premium Refunds paid or owed to VNBC in connection with the Policies and that any legal right of the FDIC or the Bank to such Insurance Proceeds and/or Premium Refunds is made, if at all, solely as general unsecured creditors of the Estate, subject to the objections and claims set forth in this Complaint.

63. To the extent that the FDIC, as receiver for the Bank, obtains Insurance Proceeds or Premium Refunds under any of the Policies, VNBC asserts that the FDIC has no interest in the same and asserts that the Estate has a right to setoff such amount against any obligation owed by the Estate to the FDIC, as receiver for the Bank, in the amount of such Insurance Proceeds and/or Premium Refunds.

64. The FDIC disputes VNBC's contentions as set forth in the preceding paragraph and asserts that the Committee or any successor to the Committee is exclusively entitled to any Insurance Proceeds, whether payable as a result of the D/O Adversary Proceeding or the FDIC Litigation, and to some or all of any Premium Refunds paid, or that may be due to, VNBC.

65. The controversy between VNBC and the FDIC is definite, concrete, real and immediate, and their respective interests are adverse.

66. Under 11 U.S.C. § 105 and 28 U.S.C. §§ 2201 and 2202, VNBC is entitled to a declaratory judgment that it is entitled to the Insurance Proceeds payable or paid as a result of the D/O Adversary Proceeding and the Premium Refunds, that any legal right of the FDIC or the Bank to those Insurance Proceeds and Premium Refunds is properly made, if at all, solely as general unsecured claims against the Estate, subject to the objections and claims set forth in this Complaint, and that, to the extent the FDIC, as receiver for the Bank, obtains Insurance Proceeds or Premium Refunds under any of the Policies, the FDIC has no interest in the same, and the Estate (through the Committee and/or any successor to the Committee) has a right to setoff such amount against any obligation owed by the Estate to the FDIC, as receiver for the Bank, in the amount of such Insurance Proceeds and Premium Refunds.

## IX.

## RESERVATION OF RIGHTS

67. Documents relating to the claims asserted in the FDIC POC and to defenses that VNBC may have to those claims are in the exclusive possession of the FDIC, and VNBC's investigation relating thereto are continuing. Accordingly, VNBC expressly reserves the right to amend, modify or supplement this Complaint, to file additional objections to any other claims (field or not) that may be asserted against the Estate, to seek the equitable subordination of such claims (if such claims are otherwise allowable), and to assert other and different counterclaims.

## X.

## PRAYER FOR RELIEF

**WHEREFORE,** VNBC respectfully requests that the Court enter judgment in VNBC's favor as follows:

68. On the First Claim for Relief, disallowing the FDIC POC, or, if that claim is allowed, only allowing it in an amount that reflects enforceable obligations against VNBC under applicable law and (b) an appropriate credit for the offsets and recoupment set forth above;

69. On the Second, and Third Claims for Relief, subordinating the claims asserted in the

LANDAU
GOTTFRIED &
BERGER LLP

1  FDIC POC to the allowed general unsecured claims against the Estate;

2  70.   On the Fourth Claim for Relief, declaring that VNBC is entitled to the refunds in connection with its consolidated tax returns for the years 2008 and 2009 and 2003 through 2007, and that any legal right of the FDIC or the Bank to tax refunds is properly made, if at all, solely as general unsecured claims against the Estate, subject to the objections and claims for relief set forth in the Complaint;

71.   On the Fifth Claim for Relief, declaring that to the extent the FDIC, as receiver for the Bank, obtains Insurance Proceeds or Premium Refunds under any of the Policies, the FDIC has no interest in the same, and the Estate has a right to setoff such amount against any obligation owed by the Estate to the FDIC, as receiver for the Bank, in the amount of such Insurance Proceeds and Premium Refunds, and that any legal right the FDIC or the Bank may have to such Insurance Proceeds or Premium Refunds is properly made, if at all, solely as general unsecured claims against the Estate, subject to the Objections and claims for relief set forth in the Complaint;

72.   On all Claims for Relief, directing that the FDIC provide an accounting of all transfers of property interests and money made by VNBC to the Bank within the period commencing on May 5, 2008 and ending on the Petition Date;

73.   On all Claims for relief, granting reasonable attorneys' fees and costs incurred in connection with the litigation of the FDIC POC; and

74.   For such other and further relief as the Court deems just and proper.

Dated: May 5, 2010

LANDAU GOTTFRIED & BERGER LLP

By: _____
Jon L.R. Dalberg
Counsel for Vineyard National Bancorp