FILED & ENTERED

MAY 03 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gae    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>VINEYARD NATIONAL BANCORP,<br><br>        Debtor. | Case No.: 2:10-BK-21661RN<br><br>Chapter 11 |
| BRADLEY SHARP, AS LIQUIDATING TRUST OF THE LIQUIDATING TRUST OF VINEYARD NATIONAL BANCORP,<br><br>        Plaintiff and Counter-Defendant,<br><br>   v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as receiver for Vineyard Bank, National Association,<br><br>        Defendant and Counter-Plaintiff. | Adv. No.: 2:10-AP-01815RN<br><br>**MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO (I) CAPITAL MAINTENANCE CLAIM ASSERTED BY FDIC-R; AND (II) OWNERSHIP OF TAX REFUNDS**<br><br>DATE:    April 16, 2013<br>TIME:    2:00 p.m.<br>PLACE:   Courtroom 1645 |

**INTRODUCTION**

    This opinion addresses the issue of whether summary judgment should be awarded to Counter-Defendant and Liquidating Trustee Bradley Sharp's ("Liquidating Trustee" or "Counter-Defendant") and

1

against the Counter-Plaintiff FDIC-R ("Counter-Plaintiff" or "FDIC-R") on the issue of whether this Court should disallow the FDIC-R's claim for damages in the sum of $579 million on account of Debtor Vineyard National Bancorp's ("Debtor") breach of its commitment to maintain sufficient capitalization for the Bank based on its statutory and regulatory duties to the Bank (the "Capital Maintenance Claim").  The Capital Maintenance Claim was also memorialized in the proof of claim (Claim #44) the FDIC-R filed against the Debtor's estate on January 15, 2010 ("POC") which the Liquidating Trustee seeks to disallow in the Complaint.

The general allegations concerning this adversary proceeding were laid out in this Court's Memorandum of Decision re (1) Motion of the Federal Deposit Insurance Corporation, as Receiver for Vineyard Bank, N.A., to Dismiss Count IV of the Adversary Complaint; and (2) Plaintiff's Motion for Partial Summary Judgment as to (i) Capital Maintenance Claim Asserted by FDIC-R; and (ii) Ownership of Tax Refunds ("Tax Refund MOD").

In Liquidating Trustee's Motion for Summary Judgment ("MSJ"), Liquidating Trustee argues that the Capital Maintenance Claim should be disallowed on the ground that no capital maintenance commitment exists and the FDIC-R cannot produce evidence of a capital maintenance agreement.  As a result, the FDIC-R does not have a claim even in the form of an unsecured claim against Debtor's estate.

In response ("Opp'n"), the FDIC-R argues that there are genuine issues of material fact regarding (i) whether the Written Agreement, the Capital Program, and the Capital Plan (each as defined below) constitute a binding capital maintenance commitment; and (ii)

2

whether approval by the Federal Reserve Bank of San Francisco ("Federal Reserve" or "FRB") was required to make the foregoing documents binding commitments.  It further asserts the Debtor signed three binding documents that evidence the Debtor's commitment to fund capital to its subsidiary bank Vineyard Bank, N.A. ("Bank").

The reply ("Reply") denies that these three documents demonstrate that the Debtor made a binding and unconditional commitment to fund capital to the Bank.

**DISCUSSION**

The Court has recited the legal standard for granting summary judgment in its Tax Refund MOD which the Court incorporates herein by reference and will not be repeated here.  Based on the facts and legal authorities cited by both parties, the Court concludes the case is ripe for summary judgment.  There are no questions of material fact.  The issues raised by the FDIC-R are not issues of fact but go to the interpretation of various documents relating to the Debtor's purported capital maintenance commitment and whether such documents should be read to establish such a binding commitment.

**A.    FDIC-R's Proof of Claim**

The FDIC-R asserts a priority claim against the Debtor pursuant to § 507(a)(9) of the Code.  (MSJ Ex. 1.)  FDIC-R claims Debtor failed to comply with 12 U.S.C. 1831o which imposes a capital maintenance obligation and mandates cash infusions to its subsidiary, the Bank.  Id.  Debtor further failed to meet its binding commitments in connection with its proposed capital maintenance plans to regulators.  Id.

3

Section 507(a)(9) of the Code gives priority to "allowed unsecured claims based upon any commitment by the debtor to a Federal depository institutions regulatory agency[1] (or predecessor to such agency) to maintain the capital of an insured depository institution." The claim arises from § 365(o) of the Code which provides in relevant part:

> "In a case under chapter 11 of this title, the trustee shall be deemed to have assumed (consistent with the debtor's other obligations under section 507), and shall immediately cure any deficit under, any commitment by the debtor to a Federal depository institutions regulatory agency (or predecessor to such agency) to maintain the capital of an insured depository institution, and any claim for a subsequent breach of the obligations thereunder shall be entitled to priority under section 507." 11 USC § 365(o).

In order for the FDIC-R's priority claim to be allowed, it must meet its burden to demonstrate that the Debtor made a "commitment" to a "regulatory agency" to "maintain the capital of [the Bank]." The "commitment" can be "any commitment". Id.; 11 USC § 507(a)(9).

**B.  The Debtor did not commit to provide capital to the Bank for purposes of §§ 365(o) and 507(a)(9).**

In support of its position, the FDIC-R identified three documents evidencing the Debtor's binding commitment to provide capital to the Bank. The Court disagrees that these documents

---

[1] Section 101(21B)(A) defines the term "federal depository institutions regulatory" to include the federal reserve board. Furthermore, the 1994 Amendments to § 507 "redesignated para. (8) as para. (9) and in such para. substituted 'Ninth' for 'Eighth' and substituted 'a Federal depository institutions regulatory agency (or predecessor to such agency)' for 'the Federal Deposit Insurance Corporation, the Resolution Trust Corporation, the Director of the Office of Thrift Supervision, the Comptroller of the Currency, or the Board of Governors of the Federal Reserve System, or their predecessors or successors. . . .'"

4

support a finding that the Debtor made the type of capital commitment contemplated by § 507(a)(9).

In the wake of the Bank's ultimate collapse, the Debtor, on September 23, 2008, signed an agreement ("Written Agreement") with the Federal Reserve in which, the Debtor, *inter alia*, agreed to do the following with respect to the Capital Plan:  to submit to the FRB within 60 days of the agreement "an acceptable written plan to maintain sufficient capital position at the consolidated organization and the Bank." (App. of Exs. in Supp. of Pl.'s MSJ, vol. 1, Ex.4.)

Among other things, the Capital Plan must, at the minimum, address/contain the following: (i) the Bank and the Debtor's current and future capital requirements; (ii) the adequacy of the Bank's capital including current and projected asset growth and projected earnings; (iii) the source and timing of additional funds to fulfill the Debtor and the Bank's future capital requirements; (iv) the requirement that the Debtor serve as the source of strength to the Bank; and (v) a notification procedure to inform the Federal Reserve 30 days at the end of every quarter when the capital ratios fall below the minimum and submit to the Federal Reserve an acceptable written plan to cure the deficiency. Id.

A month after the Written Agreement was signed, the Debtor and the Bank submitted a memorandum dated October 22, 2008 ("October 22, 2008 Memorandum") to the Office of the Comptroller of the Currency ("OCC") and the Federal Reserve in compliance with the Written Agreement and Consent Order.  The October 22, 2008 Memorandum included, as an exhibit, a 3-year capital model ("Capital Plan") that reflected how funds will be used upon the Debtor's successful

attempt to raise capital for the Bank. (App. of Exs. In Supp. of Def. Opp'n to Pl.'s MSJ, Ex. A.) Particularly, the October 22, 2008 Memorandum provided that the Debtor will attempt to raise capital and downstream $100 million to the Bank to comply with the regulator's capital ratio requirements. Id. The October 22, 2008 Memorandum further contemplates raising capital would require selling stock of the Debtor and potential sale of the Bank's real estate loans. Id. The October 22, 2008 Memorandum clearly states that the Capital Plan is "contingent upon the successful completion of the capital raise" described therein. Id. Lastly, the October 22, 2008 Memorandum provided that the Capital Plan is subject to further review, approval and refinement by the Debtor's board based on several factors. The Debtor asserts the October 22, 2008 Memorandum complies with the requirements of the Written Agreement and the Consent Order. Id.

The Court agrees with the Liquidating Trustee that the October 22, 2008 Memorandum, the Capital Plan and the Written Agreement did not create a "commitment" for purposes of §§ 507(a)(9) and 365(o) because the funding of the Bank was contingent upon the "capital raise" proposed in the Capital Plan. The Court further finds that the Written Agreement only required the Debtor's submission of a Capital Plan and not a commitment to maintain the Bank's capital.

While "commitment" is not defined in the Bankruptcy Code, Courts have defined it to mean an agreement or pledge that the parties to the transaction intended to be binding or enforceable. Resolution Trust Corp. v. FirstCorp (In re FirstCorp), 973 F.2d 243, 249 n. 5 (4th Cir. 1992); In re Colonial BancGroup, Inc., 436 B.R. 713, 736-38 (Bankr. M.D. Ala. 2010). Here, there is no enforceable

6

capital maintenance commitment because the proposal to fund the Bank was contingent upon raising the capital to do so.  As such, the condition precedent did not exist for the Debtor to commit to fund the Bank's capital needs.  FDIC v. Amtrust Fin. Corp. (In re Amtrust Fin. Corp.), 694 F.3d 741, 755 (6th Cir. 2012).

While the circuit courts in FirstCorp and Office of Thrift Supervision v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.), 236 F.3d 1246 (10th Cir. 2001), found a binding commitment for purposes of § 365(o), those cases are distinguishable.  Both cases involved the acquisition of a bank for which the primary condition to acquisition was the infusion of capital.  FirstCorp, 973 F.2d at 244-45; Overland Park Fin Corp), 236 F.3d at 1249.  Overland Park Fin. Corp. stipulated to maintain the net worth of the bank it acquired and to infuse sufficient additional equity capital to effectuate compliance with the applicable statutory requirements.  236 F.3d at 1249.  Similarly, the Fourth Circuit in FirstCorp found a clear recognition by the debtor of its capital maintenance obligation when the debtor sought forbearance from its obligation.  973 F.2d at 245.

Unlike the Debtor here, none of the foregoing cases included a contingency that the debtor raise the funds to implement a capital plan.  As in In re Colonial BancGroup, Inc., 436 B.R. 713, 736-38 (Bankr. M.D. Ala. 2010), the commitment has to be enforceable to be entitled to priority.  Here, the commitment, if any, was not enforceable because it was contingent upon Debtor's raising the necessary capital from outside sources which never happened.  Debtor agreed to try to raise the capital but it could not do so.  This is supported by the Federal Reserve's March 2009 report to the Debtor

stating that the Debtor is noncompliant with paragraph 3 of the Written Agreement because "an effective restoration plan has not been implemented." (App. of Exs. In Supp. of Pl.'s MSJ, Ex. 6.) The Debtor's letter to the FRB in May 2009 also acknowledged that the Debtor could not comply with paragraph 3 of the Written Agreement regarding the submission of an effective capital plan. (App. of Dep. Transcripts In Supp. of Def. Opp'n to Pl's MSJ, Ex. L to Dep. Of Jim LeSieur.)  It further observed that there was no viable or effective capital plan for the Debtor. Id.

The Court finds that because no capital plan was in effect that could be implemented due to the lack of capital raise sufficient to implement the proposed plan, the Debtor has not made a capital maintenance commitment that binds the Debtor to infuse capital to the Bank. Indeed, neither the Written Agreement nor the October 22, 2008 Memorandum states that the Debtor committed to fund the Bank notwithstanding an unsuccessful attempt to raise capital. The proposal was contingent and the contingency did not occur.

Alternatively, even if the terms of the Written Agreement and the October 22, 2008 Memorandum establish a "commitment" under 11 U.S.C. § 365(o), the Court finds no breach of such commitment that would support a priority claim under § 507(a)(9). Section 365(o) requires the Trustee to "cure any deficit" arising from the commitment. There was no deficit at the time of the petition because the contingent obligation to fund was not triggered. *See e.g.*, Clinton v. Acequia, Inc., 94 F.3d 568, 572-73 (9th Cir. 1996) (a case is not ripe where the existence of the dispute itself hangs on future contingencies that may or may not occur). Indeed, there was no evidence that the Debtor abandoned efforts to raise the funds

needed to implement a capital plan nor was there a deadline to do so. Thus, the FDIC-R does not have a priority claim under § 507(a)(9).

## CONCLUSION

For the reasons stated herein, the Court grants Plaintiff's Motion for Partial Summary Judgment on the issue of the FDIC-R's Capital Maintenance Claim. The FDIC-R's claim with respect to its Capital Maintenance Claim is disallowed.

Date: May 3, 2013

Richard M. Neiter
United States Bankruptcy Judge

9

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO (I) CAPITAL MAINTENANCE CLAIM ASSERTED BY FDIC-R; AND (II) OWNERSHIP OF TAX REFUNDS** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **May 3, 2013**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

US Trustee's Office (Los Angeles):  ustpregion16.la.ecf@usdoj.gov
Plaintiff's Counsel Gregory A Martin: gmartin@winston.com; Rolf Woolner:  rwoolner@winston.com
Defendant's Counsel Joshua D Wayser: joshua.wayser@kattenlaw.com; Jessica Mickelson, Jessica.mickelson@kattenlaw.com;

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

**Defendant's Counsel:**
Linda Berberian
FDIC Legal Division
Dallas Regional Office
1601 Bryan Street
Dallas, TX 75201

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page